UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CORIZON CORRECTIONAL MEDICAL )<br>CORPORATION et al., )<br>GEO GROUP, )<br>)<br>Defendants. ) | No. 1:17-cv-01117-WTL-DML |

**Entry Granting Corizon's Motion for Summary Judgment
on Affirmative Defense of Exhaustion**

Plaintiff Anthony Williams, a former offender incarcerated within the Indiana Department of Correction ("IDOC"), filed this lawsuit on April 7, 2017, when he was still an inmate at New Castle Correctional Facility ("New Castle"). Mr. Williams sued GEO Group ("GEO") (the corporation that runs New Castle) and Corizon Correctional Medical Corporation ("Corizon") (the company contracted to provide medical care to inmates during the relevant time period). Mr. Williams alleged that Corizon and GEO have a practice of delaying medical care (including pain medication) for serious medical needs and as a result his broken knee bone went undiagnosed for an excessive amount of time and he was only provided an ace bandage, crutches and aspirin for pain. Mr. Williams first injured his knee on January 8, 2017, and reinjured it on January 11, 2017.

Corizon seeks resolution of this action through summary judgment. Corizon asserts that it is entitled to judgment as a matter of law because Mr. Williams failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.

§ 1997e(a), before filing this lawsuit. Mr. Williams never responded to Corizon's dispositive motion, but instead filed a Cross Motion for Summary Judgment on October 19, 2017. (Doc. 38.)

For the reasons explained below, Corizon's motion for summary judgment, Dkt. No. 28, is **granted** and Mr. Williams's cross-motion for summary judgment, Dkt. No. 38, is **denied as to Corizon.**

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## II. Undisputed Facts

Applying the standard set forth above, the following facts are undisputed.

### A. *Offender Grievance Process*

As an inmate incarcerated with the IDOC, the Offender Grievance Process has been available to Mr. Williams. The intent of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. All offenders are made aware of the Offender Grievance Process during orientation to the IDOC and at the facilities. Further, copies of the Offender Grievance Process and its administrative procedures are placed in various locations in IDOC facilities for ready access by the offenders.

The IDOC recognizes only one grievance process. The complete grievance process consists of three stages: (i) an informal attempt to solve a problem or address a concern, which can be followed by (ii) the submission of a written formal grievance outlining the problem or concern and other supporting information, and the response to that submission, which can be followed by (iii) a written appeal of the response to a higher authority and the response to that appeal.

Under the grievance procedures, an offender is required to attempt to resolve a complaint informally before filing a formal grievance. If an inmate is unable to resolve his complaint informally, he may file a Formal Grievance form. Once an adequate grievance form is received, the Grievance Specialist logs the grievance into the Offender Grievance Response System ("OGRE") which assigns it a case number and provides a receipt for the grievance to the offender. An offender must file a Level I formal grievance within twenty business days from the day of the event that is subject of the grievance. The IDOC has fifteen business days to respond to the grievance.

If the formal written complaint is not resolved in a manner that satisfies the offender, or if the offender did not receive a response to his or her grievance within twenty working days, the offender may pursue the issue by filing an appeal with the IDOC's Department Offender Grievance Manager (Level II Grievance Appeal) within ten working days from the date of receipt of the grievance response. The Offender Grievance Process is not complete until the offender receives a response to his appeal.

### B. Mr. Williams's Grievance History

Mr. Williams's grievance history in OGRE reflects that he did not pursue one grievance through the entire IDOC grievance process. He submitted one grievance, which concerned a disciplinary issue and the loss of a job. This grievance was returned on October 24, 2016, because it was filed out of time and did not involve an issue that could be grieved.

### III. Discussion

Corizon argues that because Mr. Williams failed to exhaust his administrative remedies as required prior to filing this action, his claims against it must be dismissed. *See Pozo*, 286 F.3d at 1024-25; *see also Roberts v. Neal*, 745 F.3d 232, 234-35 (7th Cir. 2014).

### A. Prison Litigation Reform Act

The PLRA requires that a **prisoner** exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022,

4

1025 (7th Cir. 2002)). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required.").

It is Corizon's burden to establish that the administrative process was available to Mr. Williams. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted).

### B. *Failure to Exhaust*

Corizon argues that the undisputed evidence shows that Mr. Williams failed to exhaust his administrative remedies regarding his allegations in the Complaint prior to filing this civil action. In response, Mr. Williams alleges that he "complained of his pain and suffering through a series of grievances to the GEO staff. He did exhaust his administrative remedies prior to filing a lawsuit." (Doc. 38 at 3.) But there is no evidence to support this assertion as is required at this stage in the litigation. In other words, the assertion that Mr. Williams complained through "a series of grievances" is not evidence that the Offender Grievance Policy's requirements were met. In addition, even if Mr. Williams filed a dozen grievances, he did not exhaust his administrative remedies if he failed to appeal those grievances through the grievance process.

5

The PLRA specifically states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e. In other words, Mr. Williams was required to complete the grievance process before filing this lawsuit because he was incarcerated at the time the Complaint was filed. *See Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). He did not do so.

Finally, there is no basis to conclude that the grievance process was unavailable to Mr. Williams. *See Ross,* 136 S. Ct. at 1858 ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### IV. Conclusion

Corizon has shown that Mr. Williams did not exhaust his available administrative remedies prior to filing this lawsuit. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that this lawsuit should not have been brought against Corizon and shall now be dismissed without prejudice as to Corizon. *See Ford*, 362 F.3d at 401 (7th Cir. 2004)("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

Accordingly, Corizon's motion for summary judgment, Dkt. No. 28, is **granted** and Plaintiff's cross-motion for summary judgment on the merits, Dkt. No. 38, is **denied as moot.**

Partial final judgment shall issue at this time as to the claims resolved in this Entry to avoid any confusion regarding Mr. Williams's ability to immediately refile this action as a non-prisoner. There is no just reason to delay the Entry of Final Judgment as to Defendant Corizon. The PLRA's requirements would not apply to a newly filed action because Mr. Williams is no longer a prisoner.

Date: 11/28/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

ANTHONY WILLIAMS
5260 Hartford Ave.
Columbus, IN 47201

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com